JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
1621 Coit Road Realty, LLC, 5601 Plum Creek Drive Realty, LLC, 2301 North Oregon Street Realty, LLC, and 8200 National Avenue Realty, LLC.

**(b)** County of Residence of First Listed Plaintiff: **Saint Joseph County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tracey Wallace, Schiff Hardin LLP, 300 Crescent Court, Suite 400, Dallas, Texas 75201
(214) 981-9936

## DEFENDANTS
Midwest TX Realty, LLC, Josef Neuman, Oscar Rosenberg

County of Residence of First Listed Defendant: **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability |  | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  | **PERSONAL PROPERTY** / **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
|  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
|  |  | ☐ 791 Employee Retirement Income Security Act |  | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  |  |  |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Breach of contract and breach of guaranty agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of 75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE: 11/30/2016

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

JS 44-TXND Reverse (Rev 07/16)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority for Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
    (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
    (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
    United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here. United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
    Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
    Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.
    Original Proceedings. (1) Cases which originate in the United States district courts.
    Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
    Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
    Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
    Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
    Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
    Multidistrict Litigation – Direct File. (7) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P. Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction. Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or a similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| 1621 COIT ROAD REALTY, LLC, ) | |
| 5601 PLUM CREEK DRIVE REALTY, LLC, ) | |
| 2301 NORTH OREGON STREET REALTY, LLC, and 8200 NATIONAL AVENUE REALTY, LLC ) ) ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. |
| ) | |
| ) | |
| MIDWEST TX REALTY, LLC, ) | |
| JOSEF NEUMAN, OSCAR ROSENBERG ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiffs 1621 Coit Road Realty, LLC ("Coit Road"), 5601 Plum Creek Drive Realty, LLC ("Plum Creek"), 2301 North Oregon Street Realty, LLC ("North Oregon"), and 8200 National Avenue Realty, LLC ("National Avenue") (collectively referred to as "Plaintiffs") for their Complaint against defendants Midwest TX Realty, LLC ("Midwest"), Josef Neuman ("Neuman") and Oscar Rosenberg ("Rosenberg") (collectively "Defendants") state as follows:

### NATURE OF THE ACTION

1. Plaintiffs are the owners of six properties in Texas and two properties in Oklahoma that have been used and operated as either skilled nursing facilities or long-term acute-care hospitals.

2. On June 5, 2015 Plaintiffs entered into a Master Lease with Midwest so that Midwest could sublease those properties to affiliates of Midwest that would obtain licenses for and operate the facilities as skilled nursing facilities or long-term acute-care hospitals.

3. Midwest has breached the Master Lease by, among other things, failing to pay rent under the terms of the Master Lease and unilaterally ceasing operations at two of the facilities. Midwest has failed to cure the defaults.

4. As a result of Midwest's breaches of the Master Lease, Plaintiffs are entitled to immediate relief, including but not limited to appointment of a Manager/Consultant to operate the facilities and the imposition of a constructive trust for the benefit of Plaintiffs for the collection of all monies received by Midwest related to the operation of the facilities located at the properties.

## THE PARTIES

5. Plaintiff Coit Road is a limited liability company formed under the laws of the State of Indiana. Its principal place of business is 6101 Nimitz Parkway, South Bend, Indiana. Its sole member is Strawberry Fields REIT, Ltd. ("Strawberry Fields"), a company incorporated under the laws of the British Virgin Islands with its principal place of business in South Bend, Indiana.

6. Plaintiff Plum Creek is a limited liability company formed under the laws of the State of Indiana. Its principal place of business is 6101 Nimitz Parkway, South Bend, Indiana. Its sole member is Strawberry Fields.

7. Plaintiff North Oregon is a limited liability company formed under the laws of the State of Indiana. Its principal place of business is 6101 Nimitz Parkway, South Bend, Indiana. Its sole member is Strawberry Fields.

8. Plaintiff National Avenue is a limited liability company formed under the laws of the State of Indiana. Its principal place of business is 6101 Nimitz Parkway, South Bend, Indiana. Its sole member is Strawberry Fields.

9. Midwest is a limited liability company formed under the laws of the State of Texas. Its principal place of business is 6203 Turner Way, Dallas, Texas. On information and belief, its members are citizens of Texas and New Jersey.

10. Neuman is a citizen of the State of New Jersey, residing in Lakewood, New Jersey. Neuman is subject to personal jurisdiction in Texas because, among other things, he has conducted business in Texas (as Midwest's manager and a manager for the subtenants of the properties at issue in this case) and recruited Texas residents for employment inside this state (namely employees of Midwest and/or the subtenants).

11. Rosenberg is a citizen of the State of Texas, residing in Dallas, Texas.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332, because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## FACTS COMMON TO ALL COUNTS

**A.     Negotiation of the Master Lease**

14. Each of Plaintiffs was formed specifically for the purpose of owning and leasing certain properties that are operated as either skilled nursing facilities or long-term acute-care hospitals.

15. Plaintiff Coit Road owns property located at 1621 Coit Road, Plano, Texas at which there exists a skilled nursing facility commonly known as Heritage Manor Healthcare Center and a long-term acute-care hospital commonly known as Plano Specialty Hospital.

16. Plaintiff Plum Creek owns property located at 5601 Plum Creek Drive, Amarillo, Texas at which there exist a skilled nursing facility commonly known as Plum Creek Healthcare Center and a long-term acute-care hospital commonly known as Plum Creek Specialty Hospital.

17. Plaintiff North Oregon owns property located at 2301 North Oregon Street, El Paso, Texas at which there exists a skilled nursing facility commonly known as Horizon Healthcare Center at El Paso and a long-term acute-care hospital commonly known as Mesa Hills Specialty Hospital.

18. Plaintiff National Avenue owns property located at 8200/8210 National Avenue, Midwest City, Oklahoma at which there exists a skilled nursing facility commonly known as Midwest City Nursing Center and a long-term acute-care hospital commonly known as Specialty Hospital of Midwest City.

19. Neuman and Rosenberg are principals in an organization called Concord Healthcare Group ("Concord").  Concord is in the business of operating skilled nursing facilities, long-term acute-care hospitals and other healthcare facilities throughout Texas and in Oklahoma.

20. In March 2015 Neuman and Rosenberg began to engage in discussions with representatives of Plaintiffs concerning the possibility of leasing the aforesaid properties so that Concord could operate skilled nursing facilities and long-term acute-care hospitals, as the case may be, at such locations.

21. Prior to June 5, 2015 Neuman and Rosenberg caused the Midwest limited liability company to be formed for the purpose of entering into a master lease agreement with Plaintiffs for the properties.

22. On or about June 5, 2015 Midwest and Plaintiffs executed the Master Lease for the lease of the properties to Midwest.  A copy of the Master Lease is attached to this Complaint

as Exhibit A.  It was understood by Plaintiffs that Midwest or Neuman and Rosenberg had formed, or caused to be formed, entities to enter into subleases for the properties and to obtain the necessary licenses and other permits and approvals to operate those facilities as skilled nursing facilities and long-term acute-care hospitals, as appropriate.  The entities that were formed to enter into the subleases were organized as limited-liability companies whose sole members are Neuman and Rosenberg.

23.     Neuman and Rosenberg also executed a Guaranty, guaranteeing Midwest's performance under the terms of the Master Lease.  A copy of the Guaranty is attached to this Complaint as Exhibit B.

**B.     Select Terms of the Master Lease**

24.     The term of the Master Lease commenced on July 1, 2015 and runs (absent any extension) until the 15th anniversary of the commencement date.

25.     Under Section 4.1(a) of the Master Lease, Base Rent, to be paid monthly in advance by Midwest, was set at $341,666.67 per month.  The Master Lease also provides that Base Rent will increase two and one half percent on each anniversary of the commencement date.

26.     Under Section 4.1(d) of the Master Lease, Midwest must pay as Additional Rent "all costs, expenses and obligations of every kind whatsoever relating to the Real Property which may arise or become due during the Term of this Lease. . . ."

27.     Under Section 4.2 of the Master Lease, Midwest must also pay as Additional Charges, among other things set forth in that section, "every fine, penalty, interest and cost which may be added for non-payment or later payment of such items," including Base Rent and

Additional Rent. Section 4.2 also requires Midwest to pay a late charge on all late or unpaid rent payments, computed in the manner and at the rate set forth in the Master Lease.

28. Under Section 7.2(b) of the Master Lease, Midwest "shall use or cause to be used the Leased Properties and the improvements thereon as skilled nursing facilities or long term acute care hospitals and for such other uses as may be necessary or incidental to such use (the particular such use to which the Leased Properties are put at any particular time is herein referred to as the 'Primary Intended Use')."

29. Midwest also agreed under Section 7.2(c) of the Master Lease that "during the Term it will operate continuously the Leased Properties as a provider of health care services in accordance with its Primary Intended Use and to maintain its certifications for reimbursement and licensure and its accreditation. . . ."

30. Section 7.2(e) of the Master Lease provides that "[Midwest] shall not commit or suffer to be committed any waste on the Leased Properties or in the Facility. . . ."

31. Section 10.1 of the Master Lease provides as follows:

Should [Midwest] fail to perform any of its covenants herein agreed to be performed, Lessor [i.e., Plaintiffs] may, upon nineteen (19) days prior notice specifying the work to be done or covenant to be performed and the approximate amount to be expended, but shall not be required to, make such payment or perform such covenants, and all sums so expended by Lessors thereon shall upon notice of payment by Lessor be immediately payable by [Midwest] to Lessor, with interest thereon at the then published Prime Rate plus three (3%) percent (the "Default Rate"), but not in excess of the maximum interest rate permitted by law from the date expended until paid, and in addition, [Midwest] shall reimburse Lessor for Lessor's reasonable expenses in enforcing or performing such covenants, including reasonable attorneys' fees. Any such costs or expenses incurred or payment made by Lessor shall be deemed to be Additional Rent by [Midwest] and collectible as such by Lessor.

32. Under Section 13.3 of the Master Lease, Midwest is obligated to "keep in good standing and in full force and effect all necessary licenses, permits and certifications required by any governmental authority for the purpose of maintaining and operating on the Real Property

whatever necessary for facilities to be operated as their Primary Intended Use of not less than the number of licensed bed and units listed on Schedule C. . . ."

    33.    Under Section 20.1 the following constitute Events of Default under the Master Lease:

>   (a) Lessee's failure to pay when due any Rent payment, or any part thereof, or any other sum of sums of money when due or payable to Lessor under the provisions of this Lease when such failure shall continue for period of five (5) calendar days after written notice from Lessor to Lessee;
>
>   (b) Lessee's failure to perform, or Lessee's violation of, any of the covenants, terms conditions or provision of this Lease, if such failure or violation shall not be cured within twenty-five (25) days after written notice thereof by Lessor to Lessee . . .;
>
>   . . . .
>
>   (d) Lessee's failure to perform, or Lessee's violation of, any of the terms, conditions or provision of any Mortgage relating the real property . . ., if such failure or violation shall not be cured within twenty-five (25) days (or such lesser time period as may be required by the Mortgage) after notice thereof by Lessor to Lessee. Without limiting the generality of the above, (1) Lessee and Sublessees failure to maintain a Minimum Rent Coverage (based on free cash flow) as required by the Mortgagee, with the Minimum Rent Coverage being no less than 1.25:1 and no more than 1.40:1 before distributions and 1.10:1 after distributions. . . .
>
>   (k) Lessee's abandonment of the Real Property or cessation of operations for a period of more than ten (10) business days (except as a result of a Casualty);
>
>   . . . .
>
>   (o) if Lessee shall:
>
>      (i) admit in writing its inability to pay its debts generally as they become due;
>
>      . . . .
>
>   (q) If (i) Lessee receives written notice that the Facility's applicable license will be revoked. . . .

    34.    Section 20.2 of the Master Lease provides that Plaintiffs "shall have all rights at law and in equity available to [Plaintiffs] as a result of Lessee's breach of this Lease," including

specifically "the right to install a Manager or Consultant, either a third party or an affiliate of lessor, to assist the Lessee in curing the breaches under this section." In addition, under Section 20.3 of the Master Lease, Midwest must "pay as Additional Charges all costs and expenses incurred by or on behalf of [Plaintiffs], including, without limitation, Management and/or Consulting fees, reasonable attorneys' fees and expenses, as a result of any Event of Default hereunder."

35. Section 20.6 of the Master Lease provides (among other things) that "[u]pon the occurrence of an Event of Default, or upon filing of a suit or other commencement of judicial proceedings to enforce the rights of [Plaintiffs], hereunder, and after providing [Midwest] with notice as required by the applicable jurisdiction, [Plaintiffs] shall be entitled, as a matter of right, to . . . install a Manager/Consultant, whether third party or affiliated of the Lessor to receive the revenues, earnings, income, products and profits thereof."

36. Section 22.2 of the Master Lease further provides that "[d]uring the period from and after an Event of Default of monies received by [Midwest] relative to operations at the Property will be held in constructive trust for the benefit of Lessor [i.e. Plaintiffs] and deposited into an account specified by Lessor and as to which Lessor shall have signatory authority."

37. Section 26.1 of the Master Lease provides that "Lessee further agrees that it shall not do or permit to be done anything which would constitute a breach of or default under any obligation of Lessor under any Mortgage, it being the intention hereof that Lessee shall so comply with and observe each and all of such covenants, conditions and provision of the Facility Mortgage or any mortgage affecting the Real Property so that they will at all times be in good standing and there will not be any default on the part of Lessor thereunder."

38.     Section 30.1 of the Master Lease provides that "[i]n addition to and not in lieu, place, stead and/or substitution of any other indemnity set forth elsewhere herein, [Midwest] agrees to protect, indemnify and save harmless [Plaintiffs] from and against any claims, demands and causes of action of any nature whatsoever . . . incurred by [Midwest] on account of: . . . (b) any failure on the part of [Midwest] during the term of this Lease to perform or comply with any of the terms of this Lease; [or] (c) any breach by Lessee of its representations, warranties or covenants hereunder. . . . This indemnity obligation shall survive any termination of this Lease or repossession of the Property."

39.     Section 48.5 of the Master Lease provides "[i]f an action shall be brought to recover any Rent under this Lease, or for or on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Lease, or for the recovery of possession of the Real Property, the prevailing party shall be entitled to recovery from the other party, as part of the prevailing party's costs, reasonable attorneys fees, the amount of which shall be fixed by the court and shall be made a part of any judgment rendered."

### C.    Breaches of the Master Lease

40.     In or about November 2015 Plaintiffs became aware that Midwest and the affiliated subtenants were experiencing financial difficulties.  As a result of Midwest's financial problems, Plaintiffs (among other things) were forced to pay down over $1,200,000 in principal on underlying debt for the properties leased to Midwest under the Master Lease.

41.     As an apparent result of Midwest's and the affiliated subtenants' continuing financial difficulties, on or about October 28, 2016 they ceased operations at two of the long-term acute-care hospitals:  Plano Specialty Hospital and Plum Creek Specialty Hospital.  Neither

Midwest nor its affiliated subtenants have recommenced operations at either Plano Specialty Hospital or Plum Creek Specialty Hospital.

42. Midwest also has advised Plaintiffs that because operations were discontinued at Plano Specialty Hospital and Plum Creek Specialty Hospital, the licenses issued by the State of Texas for those facilities to operate as healthcare facilities are in imminent danger of being revoked.

43. Midwest also has advised Plaintiffs that it intends to immediately cease operations at the other two long-term acute-care hospitals subject to the Master Lease:  Midwest City Specialty Hospital and Mesa Hills Specialty Hospital.

44. In addition, Midwest has failed to pay to Plaintiffs Base Rent and Additional Rent in full on the first of each month as provided in Section 4.1(b) of the Master Lease.  Among other things, Midwest has refused to pay $133,929.46 in Base Rent and Additional Rent due for November 2016 by November 1, 2016.

45. Further, Midwest has failed to maintain a Minimum Rent Coverage as required under Section 20.1(d) of the Master Lease of no less than 1.25:1 and no more than 1.40:1 before distributions and 1.10:1 after distributions.

## COUNT I – BREACH OF CONTRACT

46. Plaintiffs hereby restate and incorporate by references paragraphs 1 through 45 of the Complaint as this paragraph 46.

47. Midwest's actions or failures to act—specifically the failure to pay Base Rent when due, the cessation of operations at two of the facilities that are the subject of the Master Lease, and the failure to deliver financial statements on a timely basis—constitute one of more Events of Default under the terms of the Master Lease.

48. In particular, Midwest has breached the Master Lease by

  (a)  Failing to pay in full when due Base Rent and Additional Rent for November 2016;

  (b)  Failing to use the Leased Properties for their Primary Intended Use;

  (c)  Failing to operate continuously the Leased Properties as a provider of health care services in accordance with its Primary Intended Use;

  (d)  Failing to take steps intended to ensure that the licenses at the Leased Properties are maintained and kept in good standing:

  (e)  Committing waste at the Leased Properties or the facilities at such properties;

  (f)  Ceasing operations at the Leased Properties; and

  (g)  Otherwise failing to meet its obligations and covenants under the terms of the Master Lease as alleged herein.

49. By letters dated October 11, 2016 and November 11, 2016, Plaintiffs gave written notice to Midwest that its actions or failures to act had caused multiple Events of Default under the terms of the Master Lease.

50. Midwest has failed to cure any such Events of Default and is still in breach of the Master Lease.

51. Plaintiffs have performed all conditions and covenants required of them under the terms of the Master Lease.

52. Plaintiffs have suffered damages as a direct result of certain of Midwest's breaches of the Master Lease, including but not limited to unpaid Base Rent and Additional Rent arising from the foregoing breaches.

53. In addition, Plaintiffs have suffered injury that is not capable of adequately being compensated for by way of an award of damages. Accordingly, Plaintiffs are entitled to, among other things, the remedies provided for under the terms of the Master Lease, including but not limited to the right to place at each facility a Manager/Consultant for the purpose of operating such facilities and the right to have a constructive trust imposed on all sums of money received at each of the facilities.

54. Plaintiffs are also entitled to recover their costs, including attorneys' fees, for having to commence this action to seek remedies for Midwest's breach of the Master Lease.

WHEREFORE, Plaintiffs pray for the following as to Midwest:

    A.    Compensatory damages in an amount well in excess of $75,000 that compensates Plaintiffs for their pecuniary losses;

    B.    Entry of preliminary and permanent injunction;

    C.    All costs, including attorneys' fees, incurred by Plaintiffs in connection with this matter;

    D.    Such further relief that the Court deems appropriate.

## COUNT II – BREACH OF GUARANTY

55. Plaintiffs hereby restate and incorporate by references paragraphs 1 through 54 of the Complaint as this paragraph 55.

56. Pursuant to Section 1 of the Guaranty, Neuman and Rosenberg "absolutely, irrevocably and unconditionally guarantee[] the prompt and unconditional payment of all payments of Base Rent and Impositions due pursuant to the Lease during the Guaranty Period (as defined herein) (the 'Guaranteed Obligations')."

57. Midwest's failure to pay in full when due Base Rent for November 2016 triggered the obligations of Neuman and Rosenberg to guaranty and pay the balance of the Base Rent that was not paid for November 2016.

58. The aforesaid October 11, 2016 and November 11, 2016 letters constituted written notice that Midwest defaulted on its obligations under the terms of the Master Lease. To date, neither Neuman nor Rosenberg has paid the balance of Base Rent due and unpaid.

59. As a result, Neuman and Rosenberg are in breach of their Guaranty.

60. Plaintiffs have been directly damaged as a result of Neuman's and Rosenberg's failure to make payment in accordance with their Guaranty.

61. Plaintiffs are also entitled to recover their costs, including attorneys' fees, for having to commence this action to seek remedies for Neuman's and Rosenberg's breach of the Guaranty.

WHEREFORE, Plaintiffs pray for the following as to Neuman and Rosenberg:

    A. Compensatory damages in an amount in excess of $75,000 that compensates Plaintiffs for their pecuniary losses;

    B. All costs, including attorneys' fees, incurred by Plaintiffs in connection with this matter;

    C. Such further relief that the Court deems appropriate.

Dated: November 30, 2016  /s/ Tracey R. Wallace  
Tracey R. Wallace  
twallace@schiffhardin.com  
Bar Number 00797617  
SCHIFF HARDIN LLP  
300 Crescent Ct., Suite 400  
Dallas, TX 75201  
(214) 981-9900 (phone)  
(214) 981-9901 (fax)  

John N. Scholnick  
jscholnick@schiffhardin.com  
David C. Giles  
dgiles@schiffhardin.com  
Mir Y. Ali  
mali@schiffhardin.com  
*(pro hac vice motions to be filed)*  
SCHIFF HARDIN LLP  
233 S. Wacker Dr., Suite 6600  
Chicago, Illinois 60606  
(312) 258-5500 (phone)  
(312) 258-5600 (fax)  
Attorneys for Plaintiffs